## Neehan, to use, v. Smyth.

*Corporations—Mortgage—Illegal mortgage—Consideration—Mortgage to secure stockholders—Constitutional law—Estoppel.*

1. Where stockholders of a corporation borrow money from a trust company on their notes, and pay over the proceeds to the corporation in payment for their stock, and thereafter the corporation, without action by the stockholders or directors, executes a mortgage to the trust company to secure the notes, the mortgage is absolutely void and will not be considered in the distribution of the proceeds of a sale by the sheriff of the corporation's real estate.

2. In such case, where it appears that three of the stockholders, who were lien creditors junior to the mortgage, signed the mortgage as officers of the company, such persons will not be estopped from denying the validity of the mortgage, if it appears that they did not receive any money on the faith of the mortgage, but that their claims were based on their own notes from the company before the mortgage was given.

Exceptions to sheriff's distribution. C. P. Montgomery Co., June T., 1925, No. 38.

*Thomas Hallman* and *H. I. Fox*, for exceptants.

*A. Clarence Emery*, for Conshohocken Trust Company.

KNIGHT, J., Aug. 2, 1926.—On a writ of *alias fi. fa.* issued as of the above term and number, the real estate of the Penn Brick Company was sold by the Sheriff of Montgomery County for $11,550. From this amount the debt, interests and costs were paid and also several judgments and preferred claims. The balance, $7661.34, was awarded by the sheriff in distribution to the Conshohocken Trust Company on account of a mortgage of $12,000 held by that bank, covering the real estate sold. George W. Jones, William Winterbottom, E. C. A. Moyer and H. H. Lineaweaver & Company, Inc., holding liens subsequent in time to the mortgage of the Conshohocken Trust Company, have filed exceptions to the sheriff's distribution, alleging that the mortgage of the Conshohocken Trust Company is illegal and void, because it was executed by

the Penn Brick Company without receiving any consideration therefor and was given as collateral security for the indebtedness of certain stockholders of the Penn Brick Company to the Conshohocken Trust Company.

It appears from the depositions that on or about Jan. 3, 1923, E. C. A. Moyer, William I. Winterbottom, George W. Jones, Belleville Smyth, John E. Dempsey and Rudolph Smith, all of whom were stockholders of the Penn Brick Company, each borrowed on individual judgment note $500 from the People's National Bank of Conshohocken. This money was either paid to the brick company by the individuals or deposited to the credit of the company at their request. It is uncontradicted that this money was paid to the brick company by the individuals above named in payment of stock of the company issued to them. At various times further amounts were advanced to these individuals in the same way and for the same purpose. On Jan. 1, 1924, the Conshohocken Trust Company took over the assets and business of the People's National Bank. On April 21, 1924, the aggregate of the notes of the individuals above named held by the trust company amounted to the sum of $12,000, and the trust company demanded a mortgage of the brick company, whereupon the officers of the brick company executed and delivered to the trust company the mortgage in question, the trust company still holding the notes of the individuals, all of which have been paid by the various debtors at this time except three, aggregating the sum of $6300. The interest on the notes was paid by the brick company while it had funds. No action was ever taken by the board of directors or the stockholders of the brick company authorizing the mortgage, and the transaction did not appear upon its books.

Under these circumstances, the exceptants contend that the mortgage given the trust company is illegal and void or, at best, a collateral security, while the trust company contends this loan was the primary obligation of the brick company.

If the mortgage is a legal and valid instrument, it makes little difference whether it was a primary obligation of the brick company or given as collateral security. But is it a valid mortgage?

The Constitution of Pennsylvania provides: "No corporation shall issue stocks or bonds, except for money, labor done, or money or property actually received; and all fictitious increase of stock or indebtedness shall be void. The stock and indebtedness of corporations shall not be increased, except in pursuance of general law nor without the consent of the persons holding the larger amount in value of the stock first obtained at a meeting to be held after sixty days' notice given in pursuance of law."

This language of the Constitution is plain, direct and positive. It is an absolute prohibition without qualification of any kind. The uncontradicted evidence shows that the People's National Bank loaned to Winterbottom *et al.* money on their individual notes, and that the mortgage was not demanded or given until all the money, with the exception of the last instalment, had been paid to the individuals. Much of the money had been paid to them many months before the execution of the mortgage.

It is also uncontradicted that the proceeds of these notes were used by the various borrowers in purchasing stock of the brick company. The loans never appeared upon the books of the brick company, and the trust company still holds the notes of those individuals who have not paid. The brick company received no money or property as proceeds of the mortgage, and, so far as the brick company is concerned, the mortgage is fictitious and, therefore, void. Three of the exceptants, Winterbottom, Moyer and Jones, were stockholders of the brick company and signed the mortgage as officers of that company, or

Neehan, to use, v. Smyth.

at least had knowledge of the mortgage which was given by the brick company to the trust company.

It may be urged that it comes with ill grace from them to question the validity of a transaction which they themselves were parties to. If these three exceptants had received the money from the trust company on the faith of the mortgage that they were parties to, the trust company might well have argued that they were estopped from attacking the validity of a mortgage upon the faith of which they had profited. The evidence shows, however, that these three exceptants did not receive the money from the bank and trust company upon the faith of the mortgage, but that they had received the money on their own notes before the mortgage was given.

We are, therefore, of the opinion that the exceptions should be sustained.

And now, Aug. 2, 1926, the exceptions filed to the distribution of the sheriff in the above cause by George W. Jones, William I. Winterbottom, E. C. A. Moyer and H. H. Lineaweaver & Company, Inc., are hereby sustained.

From Aaron S. Swartz, Jr., Norristown, Pa.